In the United States District Court
for the Southern District of Georgia
Brunswick Division

FILED
U.S. DIST. COURT
BRUNSWICK DIV.
2005 JUN 10 A 10:01
CLERK
SO. DIST. OF GA.

BARBARA POWELL, as legal : CIVIL ACTION
legal guardian of
JEFFREY A. POWELL, :

    Plaintiff, :

       v. :

JOHNNY WHEELIS d/b/a :
W & W Hauling; RICHARD D.
LITTLE; and W & W HAULING, :
INC., a Georgia corporation,
                              :

    Defendants.              NO. CV203-195

## O R D ER

Presently before the Court are Plaintiff's objections to evidentiary rulings by U. S. Magistrate Judge James E. Graham. Judge Graham refused to exclude evidence that Jeffrey Powell was intoxicated and asleep when the accident occurred that is the subject of the instant suit. Because Defendants may establish a foundation at trial with respect to the blood alcohol tests, and because Dupont and Burke may offer expert

testimony at trial that Powell fell asleep while driving, Plaintiff's objections will be **OVERRULED** at this time.

## BACKGROUND

On the evening of February 10, 2002, Jeffrey Powell and Richard D. Little were involved in a serious automobile collision near Jesup, Georgia. Jeffrey Powell sustained permanent brain damage in the collision. Subsequently, Barbara Powell filed suit, asserting that Defendants' negligence caused the accident.

On January 11, 2005, Judge Graham denied Plaintiff's motion in limine to exclude several matters from evidence during the trial of this case. Plaintiff objected to the admission into evidence of Jeffrey Powell's blood alcohol test ordered by Dr. Demetrious Tsoulous of Wayne County Memorial Hospital ("hospital blood alcohol test"), and to his blood alcohol test ordered by the Georgia Highway Patrol ("law enforcement blood alcohol test").

Plaintiff argued that the hospital blood alcohol test should be excluded from evidence because Defendants had not shown that reasonable precautions had been taken against alteration or contamination of the blood sample. The

AO 72A
(Rev. 8/82)

Magistrate Judge refused to exclude the test, explaining that "Defendants should have the opportunity to establish the proper foundation for the admission of the blood alcohol test" at trial. Doc. No. 123 at 3.

Plaintiff asserted that certain state law requirements had to be established before the law enforcement blood alcohol test could be admitted into evidence. Judge Graham rejected this argument, finding that the admissibility of the evidence was governed by the Federal Rules of Evidence, and that a foundation could be laid at trial. Id. at 2.

Further, Plaintiff challenged Defendants' evidence that Mr. Powell fell asleep behind the wheel. Plaintiff argued that Trooper Dupont is unqualified to offer any expert opinion regarding whether Jeffrey Powell fell asleep while driving. Plaintiff also asserted that Defendants' expert, James Burke, had offered only inadmissible conjecture on the matter. As a result, Plaintiff argued that Defendants should be precluded from offering any evidence at trial that Mr. Powell was asleep at the wheel. Judge Graham decided that Dupont and Burke should be permitted to offer their opinions at trial. Id. at 6.

3

# DISCUSSION

## I. Hospital Blood Alcohol Test

Plaintiff contends that Defendants have failed to lay a foundation for admission of the hospital blood alcohol test under the Federal Rules of Evidence. Under those Rules, Defendants must make "a threshold showing that reasonable precautions were taken against alteration, contamination or adulteration." See Ballou v. Henri Studios, Inc., 656 F.2d 1147, 1155 (5th Cir. 1981).[1]

Judge Graham determined that the hospital blood alcohol test was admissible under the business records exception to the hearsay rule,[2] and that Defendants should be allowed to

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[2] Generally, the Federal Rules of Evidence prohibit parties from offering hearsay evidence, which is an out-of-court statement offered to prove "the truth of the matter asserted." Fed. R. Evid. 801©.

Rule 803 provides the "business records" exception to the hearsay rule:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that
(continued...)

4

establish a foundation at trial.³ This decision was neither clearly erroneous nor contrary to law.

It should not be difficult for Defendants to make this threshold showing, in light of the deposition testimony of Marilyn Johnson, a medical technologist at Wayne County Memorial Hospital, and the other evidence presented in the case.

> The proponent of evidence "need not rule out every conceivable chance that somehow the identity or character of the evidence underwent change. . . . So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in light of the surrounding circumstances."

Id. (quoting United States v. Lane, 591 F.2d 961, 962-63 (D.C. Cir. 1979).

---

²(...continued)
business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

³ Dr. Tsoulos testified that the entries contained in the hospital's medical records are made at or near the time of treatment, and that the entries are based on information supplied by qualified personnel at the hospital. Tsoulos Depo. 9.

5

While Johnson was not the technician who tested the blood sample at the request of Dr. Tsoulos, she did draw the second specimen for law enforcement. Johnson testified that another blood sample had been drawn from Jeffrey Powell, by a doctor, shortly before her draw. Johnson Depo. 45-47. Johnson stated that Jeannie Brown, a lab technician at Wayne Memorial, tested that blood sample and reported blood alcohol level results of .103. Brown obtained these results using a Kodak 950 blood alcohol testing machine.[4] Johnson Depo. 47, 53-55.

Moreover, Johnson explained that the hospital lab has standard operating procedures governing the protocol for blood draws and analysis, including requirements that the blood alcohol testing machines be calibrated on a regular basis. Hospital protocol also requires personnel to use blood test kits prior to their date of expiration. Johnson Depo. 54-55, 21. See Hulmes v. Honda Motor Co., Ltd., 936 F. Supp. 195, 206-07 (D.N.J. 1996)(finding that similar testimony meets threshold requirements of Fed. R. Evid. 901).

---

[4] Plaintiff impugns the reliability of the hospital testing methods and results because the hospital forms indicate that the specimen was drawn before Dr. Tsoulos requested it. However, Johnson explained that the request preceded the specimen draw, and that the request was simply recorded about 13 minutes after the specimen draw was recorded, due to the traumatic nature of Jeffrey Powell's injuries. Johnson Depo. 46-47.

6

AO 72A
(Rev. 8/82)

If Defendants show that reasonable precautions were taken, Plaintiff's authentication arguments should be made to the factfinder. Ballou, 656 F.2d at 1155 (gaps in the chain of custody and assertions that blood samples had been contaminated were reserved for the jury).

Defendants contend that the general "reasonable precautions" rule of Ballou does not apply in cases where the business record is prepared by a hospital, citing to Kuklis v. Hancock, 428 F.2d 608, 612-13 (5th Cir. 1970)(holding that factual data recorded in hospital records is admissible).

However, Kuklis predates the adoption of the Federal Rules of Evidence, and interpreted a provision similar, but not identical, to the business records exception to the hearsay rule. See Thomas v. Hogan, 308 F.2d 355, 358 (4th Cir. 1962)(the shop-book statute, enacted in 1936, and formerly codified at 28 U.S.C. § 1732, provided that "the lack of personal knowledge by the entrant or maker" affected only the weight, not the admissibility, of the evidence – in contrast to Rule 803(6), which provides that a business record may not be admitted into evidence unless it was made by, or based on information from, a person with knowledge of the events reported therein). The Ballou court gave no indication that

7

the general rule it described was inapplicable in the context of hospital records. Defendants are not excused from meeting the modest threshold requirements described in Ballou, which merely embody the authentication requirements described in the Federal Rules of Evidence.

## II. Law Enforcement Blood Alcohol Test

After the blood alcohol test requested by Dr. Tsoulos for treatment purposes, a second blood sample was drawn from Jeffrey Powell at the request of Wayne County Deputy Sheriff Cochran and Trooper Dupont. The sample was drawn by Marilyn Johnson, in Cochran's presence. According to Defendants, Johnson sealed the blood sample and gave it to Cochran, who then transferred the sample to the investigating officer, Trooper Dupont. Defendants maintain that Dupont delivered the blood sample to the Georgia Bureau of Investigation ("GBI") in Savannah, Georgia, via United Parcel Service, where it was received and tested by forensic toxicologist Sally Watford.

Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), directs federal courts sitting in diversity to apply state substantive law. Under Georgia law, a blood alcohol test is not considered valid in any subsequent legal proceeding unless certain

8

statutory requirements are established. Ga. Code Ann. § 40-6-392(a)(1)(A) (2004). First, the machine that performs the blood alcohol test must be in good working order. Ga. Code Ann. § 40-6-392(a)(1)(A) (2004). Second, the GBI must ensure that the persons conducting analyses of the results are qualified. Ga. Code Ann. § 40-6-392(a)(1)(A) (2004).

Third, if the test is requested by law enforcement, only certain "qualified persons" may withdraw the blood. Ga. Code Ann. §§ 40-6-392(a)(2), (e)(1)-(3) (2004). Fourth, the person tested may have a "qualified person" of his own choosing perform an additional test. Ga. Code Ann. § 40-6-392(a)(3) (2004).[5] Fifth, upon request, the person tested is entitled to full information about the test and its results. Ga. Code Ann. § 40-6-392(a)(4) (2004).

Plaintiff maintains that the requirements of § 40-6-392 "implicate substantive law concerns" under Erie, and contends that Defendants have failed to lay a proper foundation under this section for admission of the law enforcement blood alcohol test results into evidence. See Rovengo v. Geppert Bros., 677 F.2d 327, 329 (3d. Cir. 1982).

---

[5] However, the "justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer[.]" Ga. Code. Ann. § 40-6-392(a)(3) (2004).

9

Judge Graham rejected Plaintiff's contentions, explaining that the Federal Rules of Evidence governed the admissibility of the test results. The Magistrate Judge decided that Defendants should be permitted to lay a foundation under Federal Rule of Evidence at trial. Doc. No. 123 at 2.

The Court concurs with the Magistrate Judge's conclusion that the Federal Rules of Evidence govern the admissibility of the blood alcohol test results. See Ballou, 656 F.2d at 1153 ("In reviewing the district court's exclusion of the results of the blood alcohol test, it is important to note at the outset that even though this is a diversity case, the Federal Rules of Evidence govern the admissibility of evidence."); see also Hulmes, 936 F. Supp. at 200 (collecting federal circuit cases, explaining that the weight of authority supports the view that evidence of alcohol consumption is governed by Federal Rule of Evidence, not state requirements).

While the Georgia statutory requirements do not control in this case, the state legislature's reliability concerns may yet be important in a diversity case tried in federal court. For example, if there is some evidence that the machine on which the test was performed was not in good working order, then the Court may determine that the probative value of the test result

10

is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

The Magistrate Judge's conclusion was neither clearly erroneous nor contrary to law.[6]

III. **Evidence that Jeffrey Powell Fell Asleep While Driving**

Plaintiff objected to Judge Graham's finding that Trooper Dupont was an expert, and argued that Dupont is unqualified to opine that Jeffrey Powell was asleep at the wheel under Federal Rule of Evidence 703. The Court agrees that Defendants have not yet established Trooper Dupont's qualifications as an expert witness, but finds that Defendants need not establish Dupont's qualifications until trial. Plaintiff is free to renew her objection at that time, if appropriate.

---

[6] In the alternative, Plaintiff argues that if the Federal Rules of Evidence govern, Defendant has not shown that reasonable precautions were taken to ensure the authenticity of the law enforcement blood alcohol test result under Ballou. Defendants maintain that they intend to show at trial that reasonable precautions were taken to preserve the blood specimen. The Court agrees that this is an appropriate course to take to resolve the arguments Plaintiff has made regarding the sixty hour delay between the time of the blood draw and the time of delivery of the sample to the GBI, and the condition of storage of the blood sample during that interlude. Defendants may offer the testimony of Marilyn Johnson, Deputy Cochran, and Trooper Dupont to make this prima facie showing. The testimony of Sally Watford, Ben Chambless, Natasha Price, and Stacy Reynolds, all GBI employees, may also be offered to meet the threshold requirement.

11

Plaintiff also objects to Defendant's expert, Burke, offering an opinion regarding whether Mr. Powell fell asleep at the wheel. Plaintiff asserts that Burke stacked inference upon inference to reach this conclusion, making his opinion inadmissible due to its conjectural nature. Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir. 1982).

Defendants contend that Burke's testimony is based upon more than speculation, asserting that he relied on specific facts to reach his conclusion, including: (1) Little's testimony that the collision occurred in Little's lane of travel, (2) the physical evidence at the scene, (3) the crash damage to the vehicles, (4) the late hour at the time of the accident, (5) the lack of evidence that Jeffrey Powell took evasive action, and (6) Mr. Powell's intoxication.

The Court concludes that these facts informed Burke's opinion. As Defendants have stated, "absolute certainty is not required" to form an expert opinion, just a reasonable conclusion based on logic. Jones v. Otis Elevator Co., 861 F.2d 655, 662 (11th Cir. 1988). During his deposition, Burke stated that: "It's my opinion that he probably was [asleep] because as an explanation of why he would be in the oncoming lane." Burke Depo. 58.

12

Burke may offer an expert opinion on the matter at trial, if he can reach a conclusion in a logical manner based on the evidence. While Plaintiff is free to attack Burke's credibility with his arguably inconsistent deposition testimony,[7] Burke is not precluded from offering an expert opinion on this point just because of the artful manner in which opposing counsel characterized Burke's testimony later in the deposition.

Judge Graham's determination that Dupont and Burke could offer expert opinions on whether Jeffrey Powell was asleep at the wheel was neither clearly erroneous nor contrary to law.

## CONCLUSION

For the reasons explained above, Plaintiff's objections are **OVERRULED** at this time. Defendants may lay a foundation to admit the blood alcohol test results at trial, and Dupont may offer expert testimony at trial if he is qualified under the Federal Rules of Evidence.

**SO ORDERED**, this 9th day of June, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] In response to the question "You had indicated that you thought it might at least be a possibility, and I guess you would agree on your part speculation, as to whether Mr. Powell was asleep at the time of this accident. Would you agree with that?", Burke answered, "Yes." Burke Depo. 161.