BARBARA POWELL, as      :        CIVIL ACTION
legal guardian of
JEFFREY A. POWELL,      :

     Plaintiff,        :

        v.          :

JOHNNY WHEELIS, d/b/a    :
W & W Hauling; RICHARD D.
LITTLE; and W & W HAULING,   :
INC., a Georgia corporation,
                 :

     Defendants.               NO. CV203-195

## O R D E R

Plaintiff, Barbara Powell, filed the above-captioned case against Defendants, Johnny Wheelis, Richard D. Little, and W & W Hauling, Inc., alleging negligence in an automobile accident that caused severe and permanent injuries to her son, Jeffrey A. Powell. On October 7, 2005, a jury returned a verdict for Defendants.

Presently before the Court is Plaintiff's motion for a new trial. Because the verdict was not contrary to the weight of the evidence, and because the verdict did not result in a

miscarriage of justice, Powell's motion for a new trial will be **DENIED**.[1]

## BACKGROUND

On Sunday, February 10, 2002, at approximately 11:30 P.M., Jeffrey Powell was involved in a head-on collision with Richard D. Little, on U.S. Route 341, between Jesup and Brunswick, Georgia. Little was operating a 1989 Freightliner bobtail tractor owned by his employer, Johnny Wheelis, and Powell was driving a Ford Contour. Defendants presented credible evidence that the accident occurred in Little's lane of travel, and that Powell was intoxicated when the accident occurred.

U. S. Magistrate Judge James E. Graham presided over jury selection, pursuant to the consent of the parties. Dkt. No. 256. After Court personnel and the Magistrate Judge posed preliminary questions of the entire jury pool, fourteen

---

[1] Plaintiff has moved to strike Defendants' surreply, arguing that under Local Rule 7.6, pleadings should be closed after the moving party's initial reply brief is filed. Local Rule 7.6 provides: "A party intending to file a reply brief . . . shall serve and file the reply within eleven (11) calendar days of service of the opposing party's last brief." By its terms, this rule does not restrict reply briefs to the moving party's initial reply brief. The rule references "a party intending to file a reply brief[,]" not "the moving party[.]" The rule further mandates that service be made within eleven days of the opposing party's "last brief." If the rule were as restrictive as Plaintiff would have it, it would not have been phrased in such general and permissive terms. Consequently, Plaintiff's argument that leave of Court was required before Defendants filed their surreply is not well taken.

AO 72A
(Rev. 8/82)

potential jurors were selected at random and seated in the jury box for more detailed questioning and possible selection for jury service in the case. After potential jurors on the panel were excused for bias and were replaced by persons from the jury pool, six of the fourteen final panelists were black, like Plaintiff and her son. Wheelis and Little are white men, and W & W Hauling is a small business owned in part by Wheelis.

After Judge Graham posed certain general questions to the panel, the parties' lawyers were allowed to propound their own non-repetitive general questions. Defendants' lawyer asked the members of the panel if any of them would excuse the behavior of a person who drove a motor vehicle while legally intoxicated. In response, one juror, Yvonne Fisher, asked what the legal limit was in Georgia. Judge Graham replied that there may or may not be evidence on that issue at trial. At Plaintiff's attorney's request, the jury was polled regarding Defense counsel's prior question. The potential jurors were asked to raise a hand if they would not excuse that behavior (driving while legally intoxicated), and Judge Graham reported that the entire panel, except Fisher, raised their hands. Dkt. No. 279, Ex. A at 57.

AO 72A
(Rev. 8/82)

Plaintiff's lawyer then asked the panel whether they could put aside the issue of alcohol consumption, if the evidence demonstrated that alcohol had nothing to do with the accident. All members of the panel agreed that they were willing to keep an open mind if the evidence showed that alcohol did not cause the collision.

Thereafter, the parties exercised their peremptory challenges. Defendants' first strike was used to remove Fisher, a black woman, from the panel. Plaintiff's counsel objected immediately at sidebar, declaring that Defendants' strike was motivated by Fisher's race. In response, the Magistrate Judge asked Defendants' lawyer for a race-neutral reason for the strike. Defendants' attorney stated: "Her response to [Plaintiff's counsel's] question that if one consumed alcohol but it wasn't a proximate cause of the accident. She was nodding her head and saying, 'Yes, yes. I understand.' That's the reason I struck her." Dkt. No. 279, Ex. A at 60.

Judge Graham responded: "Every juror except that one raised her hand and gave a positive response to the question asked by Defense counsel. So I will determine that that is a racially neutral reason for removing Ms. Fisher from the jury."

4

Dkt. No. 279, Ex. A at 60. After noting Fisher's anomalous response to Defendants' counsel's prior question, the Magistrate Judge overruled Plaintiff's challenge.

Defendants used their second peremptory challenge to strike Martin J. Davis, a black man. At sidebar, Plaintiff again protested that Defendants' peremptory challenge was made on account of Davis' race. Defendants' lawyer offered the following justification for the strike:

> It is for exactly the same reason. That juror didn't raise his hand until [Fisher] looked at him, and then he raised his hand. I was watching both of them because of her response. And that's the very reason, is that they were almost in tandem on how they were going to handle the alcohol situation in this case. This is a pivotal issue. That's why I got up and asked the question that I did.

Dkt. 279, Ex. A at 61.

Judge Graham accepted this explanation as a sufficient justification for the peremptory challenge, and overruled Plaintiff's objection. Meanwhile, Powell used each of her peremptory challenges against white members of the venire.

Defendants were under the impression that the case would go forward with the first eight jurors if they waived their final peremptory strike, and they stated their intent to do so. Judge Graham informed the parties that the case would proceed with the extra juror on the panel, making a jury of nine. In

5

response, Defendants sought to withdraw their waiver, and were permitted to use their final challenge to strike another black woman, Angel Jackson. Plaintiff again objected. As a race-neutral justification for striking Jackson, Defendants' attorney explained that he was wary of Jackson's response to "the alcohol question,"[2] and further explained that Jackson, like Powell, had worked for a security company. Defendants' counsel stated that he believed that Jackson would want to take charge in the jury room, and he did not want that to occur. Judge Graham accepted Defendants' explanation, and overruled Plaintiff's objection.

On March 8, 2006, the Court heard oral argument on Plaintiff's motion for a new trial.

## DISCUSSION

> A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' . . . Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new

---

[2]

When Jackson was selected from the jury pool to replace an excused member of the venire, Judge Graham asked her the following question: "If the evidence were to indicate that one person involved in the accident had consumed alcohol before the collision, would that influence your decision in this case in any way?" Dkt. No. 279, Ex. A at 39-40. Jackson indicated that it would not.

AO 72A
(Rev. 8/82)

trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not merely the greater — weight of the evidence.'

Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)(internal citations omitted).

Powell argues that a new trial is warranted because jury selection was conducted in violation of equal protection of the law, because Defendants' counsel made improper and prejudicial remarks that prevented Plaintiff from receiving a fair trial, and due to other errors by the Court.


I.    **Jury Selection**

In Batson v. Kentucky, the Supreme Court recognized that the Equal Protection clause was violated where the government used its peremptory challenges to remove potential jurors based solely on the fact that they were of the same race as the accused, a black man.    476 U.S. 79, 88 (1986).    Batson's progeny extended this rationale to civil cases, reasoning that the court's participation in jury selection was sufficient to implicate the government in a private litigant's discriminatory trial tactics.    Edmondson v. Leesville Concrete Co., 500 U.S. 614, 622-28 (1991).

AO 72A
(Rev. 8/82)

Batson created a three-part test to analyze whether unlawful bias has occurred in jury selection. First, the opponent of the strike must demonstrate a prima facie case of discrimination.

> [T]he establishment of a prima facie case is an absolute precondition to further inquiry into the motivation behind the challenged strike[,] . . . [and] the party objecting to a peremptory challenge bears the burden of establishing facts sufficient to support an inference of racial discrimination.

Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co., 236 F.3d 629, 636 (11th Cir. 2000). While the challenger need not show that racial prejudice "more likely than not" caused the potential juror to be stricken from the array to establish a prima facie case, she must point to evidence that supports a "reasonable inference" that discrimination occurred. Johnson v. California, 162 L. Ed. 2d 129, 136-37 (2005).

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . ., and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. . . . Finally, the defendant must show that these facts and any other relevant circumstances

raise an inference that the prosecutor used that
practice to exclude the veniremen from the petit jury
on account of their race. This combination of
factors in the empaneling of the petit jury, as in
the selection of the venire, raises the necessary
inference of purposeful discrimination.

Batson, 476 U.S. at 96 (emphasis added)(internal citations,

quotations omitted).

In determining whether a prima facie case exists, the

Court should consider "all relevant circumstances[,]" including

whether the proponent of the strike made discriminatory

statements during voir dire or asked questions during voir dire

that indicated unlawful bias, and whether a pattern of striking

jurors of a particular race exists. Id. at 96-97. Yet,

striking a number of minorities from the jury venire does not

establish that racism necessarily was behind the peremptory

challenges. Rather,

[t]he number of persons of a particular race struck
takes on meaning only when coupled with other
information such as the racial composition of the
venire, the race of others struck, or the voir dire
answers of those who were struck compared to the
answers of those who were not struck.

Cent. Ala. Fair Hous. Ctr., Inc., 236 F.3d at 636-37.

In sum, Batson belies Plaintiff's contention that she

established a prima facie case merely by demonstrating that she

and the stricken venire member were both members of the same

AO 72A
(Rev. 8/82)

protected class. Plaintiff has pointed to no authority indicating such a slight, simplistic burden, and the Court has not located any decisions supporting that position. Beyond <u>Batson</u> itself, its progeny suggests that Plaintiff's proposed formulation is flawed. <u>Powers v. Ohio</u>, 499 U.S. 400, 407-15 (1991)(white defendant could object to a prosecutor's race-based exclusion of black members of the venire); <u>Johnson</u>, 162 L. Ed. 2d at 135-41 (going into some detail to explain why California's formulation of the prima facie case was too onerous); <u>see</u> <u>also</u> <u>Willis v. State</u>, 201 Ga. App. 727, 727-28 (1991)(no prima facie case where eight of ten strikes were used against black members of venire, where criminal defendant was black).[3]

Once the party objecting to the peremptory challenge demonstrates a prima facie showing of discrimination, the proponent of the strike must offer a race-neutral justification for the challenge. <u>Batson</u>, 476 U.S. at 97. The proponent's explanation does not have to be "persuasive, or even plausible." <u>Purkett v. Elem</u>, 514 U.S. 765, 766-67 (1995)(justifying the strike of potential jurors for having

---

[3]    Contrary to Plaintiff's contention, a prima facie case is not established simply because Defendants have conceded the point. The Court must determine for itself whether purposeful discrimination violated the equal protection rights of Plaintiff and the potential jurors.

10

long hair and facial hair, which "look[ed] suspicious," is permissible). A race-neutral justification is acceptable even if it based solely on a juror's body language and mannerisms. United States v. Cordoba-Mosquera, 212 F.3d 1194, 1198 (11th Cir. 2000).

Thereafter, the trial court must evaluate the proponent's explanation and determine if the proponent's motivation truly is race-neutral. Batson, 476 U.S. at 98. It is only at this stage of the inquiry that the persuasiveness of the justification offered for the strike becomes relevant. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, 514 U.S. at 768.

"Peremptory challenges allow parties to remove jurors who are perceived as having some potential of being partial. Indeed, 'by its very nature, the peremptory challenge is a tool that may be wielded in a highly subjective and seemingly arbitrary fashion, based upon mere impressions and hunches.'" Cent. Ala. Fair Hous. Ctr., Inc., 236 F.3d at 638 (quoting United States v. Annigoni, 96 F.3d 1132, 1144 (9th Cir. 1996)).

Whether there was improper discrimination in jury selection is a delicate inquiry, fraught with difficult

AO 72A
(Rev. 8/82)

credibility determinations.  The difficulty of the task has led prominent jurists to question the longstanding tradition of lawyers' use of peremptory challenges in general.  <u>See</u> <u>Miller-El v. Dretke</u>, 162 L. Ed. 2d 196, 230-35 (2005)(Breyer, J., concurring); <u>Batson</u>, 476 U.S. at 102-03 (Marshall, J., concurring).  In reviewing a <u>Batson</u> dispute, the trial judge's determination of counsel's motivations is entitled to deference.  <u>Batson</u>, 476 U.S. at 98 n.21.

## A.   Yvonne Fisher

While Plaintiff was not required to show that racial bias "more likely than not" caused Defendants to strike Fisher from the array to establish a prima facie case, she was obliged to point to evidence that provides a "reasonable inference" that discrimination occurred.  <u>Johnson</u>, 162 L. Ed. 2d at 136-37. At trial, Plaintiff did not offer any support for her supposition that Fisher was struck because of her race, and she has not explained her impression in her post-trial brief, either.

That the stricken juror belongs to the same cognizable racial group as Plaintiff, as Plaintiff's counsel stated at oral argument, is insufficient to demonstrate a prima facie

12

case. <u>Batson</u>, 476 U.S. at 96. When Fisher was struck from the panel, there was no pattern of striking black jurors, and none of the questions asked by defense counsel during voir dire indicated a racial bias. In short, Plaintiff has offered no basis on which the Court can presume that racial prejudice motivated the strike.

Even if the Court were to assume, for the sake of argument, that a prima facie case existed, Judge Graham's remark concerning other possible bases for Fisher's bias did not render the trial unfair. Defendants' counsel reported that Fisher's mannerisms during voir dire were different than other panel members', and the Court appreciates that using a peremptory challenge based on a potential juror's demeanor is susceptible to abuse. Nonetheless, Plaintiff's proposed approach, whereby each gesture must be noted on the record by the judge in order to substantiate the strike, is unworkable and is not mandated by law. <u>United States v. Diaz</u>, 26 F.3d 1533, 1543 (11th Cir. 1994)(expressing a preference for a record that is as fully developed as possible); <u>Cordoba-Mosquera</u>, 212 F.3d at 1198 (affirming use of a peremptory challenge based on a potential juror's mannerisms without independent confirmation on the record by trial court).

AO 72A
(Rev. 8/82)

The Court rejects Plaintiff's suggestion that Judge Graham's oversight of jury selection in this case was anything but thorough and fair. It is difficult, if not impossible, for a trial judge presiding over jury selection to notice every subtle gesture made by members of the venire panel, and note the same on the record. Moreover, body language is often ambiguous, and subject to interpretation.

The Eleventh Circuit has explained that the judge presiding over jury selection is entitled to the benefit of the doubt in such circumstances. "Deference is particularly warranted here, where the proffered race-neutral explanation centered on the juror's 'body language' and 'mannerisms' that signaled inattentiveness, behaviors that are especially given to on-the-spot interpretation." Id. Indeed, the justification for the strike was even greater in the case sub judice than in Cordoba-Mosquera because Fisher's gestures conveyed not inattentiveness, but bias in Plaintiff's favor.

Powell contends that the Magistrate Judge erred by offering his own, alternate reason for striking Fisher. However, Judge Graham's comment did not reject defense counsel's rationale so much as it added credence to the strike. Judge Graham acceptance of Defendants' explanation was implicit in his denial of Plaintiff's Batson challenge.

14

## B.  Martin Davis

Regarding Defendants' second peremptory challenge, the Court also finds that Plaintiff has not established a prima facie case of discrimination.  Powell has offered no basis on which a "reasonable inference" of discrimination can be founded as to the removal of Davis from the panel.  <u>Johnson</u>, 162 L. Ed. 2d at 136-37.  In any event, Judge Graham did not err in accepting Defendants' counsel's justification as race-neutral.

## C.  Angel Jackson

A prima facie case of discrimination was established with respect to Defendants' third peremptory challenge.  Defendants first attempted to waive their final strike when they believed that the ninth member of the panel, who was black, would be excluded automatically from the jury.  When Judge Graham disabused Defendants of this notion, Defendants sought to exercise their final strike, which the Magistrate Judge allowed.  Defendants struck Jackson, the third black person removed by Defendants.  These circumstances establish a reasonable inference that race motivated Defendants' decision to remove Jackson from the panel.

AO 72A
(Rev. 8/82)

Still, Defendants offered race-neutral reasons for the strike, including Jackson's response to "the alcohol question." Plaintiff denies that Jackson's response to "the alcohol question" was any different than what the other members of the venire had stated. Yet, Jackson answered a different question from the Court. Jackson was selected to replace an excused member of the venire, and she did not have an opportunity to answer the question posed to the other panelists.

Specifically, the other venirepersons were asked: "Do any of you believe that if there is an automobile collision and one person has been drinking alcohol, that regardless of how the wreck occurred, that the wreck was the fault of the person that had been drinking?" Dkt. No. 279, Ex. A at 35. In contrast, Jackson was asked: "If the evidence were to indicate that one person involved in the accident had consumed alcohol before the collision, would that influence your decision in this case in any way?" Dkt. No. 279, Ex. A at 39-40.

The first question asked if alcohol consumption, even that which resulted in an impairment rating below the legal limit, should lead to a finding of strict liability for causing a motor vehicle accident. The second question asked if any

AO 72A
(Rev. 8/82)

consumption of alcohol would affect the potential juror's decision "in any way."

It is apparent that a negative answer to the second question ought to trouble defense counsel more than a negative answer to the first question. A reasonable juror might believe that a modest amount of alcohol consumption before driving; i.e., within the amount allowed by law, could affect a driver's reaction time. While that would not mean that the drinker of alcohol should always be considered at fault in an automobile collision, no matter how the accident occurred, the fact that one of the drivers consumed alcohol could factor into a juror's analysis in deciding liability.

For this reason, Jackson's answer to the alcohol question that she was asked provides a sufficient race-neutral basis for removing her from the jury. Additionally, Jackson's security background was an independent, sufficient justification to support the peremptory challenge. These justifications for the challenge of Jackson are persuasive, and the Court concurs with Judge Graham's finding that Powell failed to carry her burden of persuasion regarding the peremptory challenge of Jackson.

In sum, the Court concludes that race was not a motivating factor in jury selection. No prima facie case was established

AO 72A
(Rev. 8/82)

regarding the peremptory challenges of Fisher and Davis, and the justifications presented by Defendants for the strikes were adequate. The Court gives deference to Judge Graham's credibility determinations.

Moreover, the disparity in the racial makeup of the venire panel did not differ significantly from that of the chosen jury. The venire was forty-three percent black (six of fourteen), and the chosen jury was thirty-eight percent black (three of eight). The actual composition of the jury was as close to the racial makeup of the venire panel as possible, and was what would be expected if race played no role in the exercise of peremptory challenges. Cent. Ala. Fair Hous. Ctr., Inc., 236 F.3d at 637.

## II. Defense Counsel's Questions and Remarks at Trial

Plaintiff argues that a new trial is warranted because Defendants' attorney assaulted Jeffrey Powell's character by hinting that Mr. Powell was irresponsible financially, and that he had a history of family violence.

The Federal Rules of Civil Procedure provide that:

> No error . . . in anything done or omitted . . . by any of the parties is ground for granting a new trial or for setting aside a verdict . . . ., unless refusal to take such action appears to the court inconsistent

AO 72A
(Rev. 8/82)

with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61.


## A.    Powell's Bankruptcy Filing

Prior to trial, Judge Graham entered an order on a motion in limine, which provided in relevant part:

> Plaintiff contends that Defendants should be precluded from referring to Jeffrey Powell's bankruptcy or alleged financial problems. Defendants assert that evidence of this nature may be admissible and relevant if Plaintiff were to introduce such evidence. This portion of Plaintiff's Motion is **GRANTED** at this time. However, should Plaintiff introduce or refer to this evidence which she wishes to exclude, Defendants shall have the opportunity to rebut the same.

Dkt. No. 123 at 6.

Where a lawyer's violation of an order on a motion in limine is clear, a new trial is warranted if the violation prejudiced the other party's ability to obtain a fair trial. Pullman v. Land O'Lakes, Inc., 262 F.3d 759, 762 (8th Cir. 2001).

Plaintiff asserts that Defendants' lawyer prejudiced her case by questioning her on cross-examination regarding whether her son had filed for bankruptcy. Before Ms. Powell was able

19

to respond, one of her lawyers objected, stating that Judge Graham's order precluded that line of inquiry. Defendants' attorney rejoined that the question was permitted because Plaintiff had introduced evidence of lost wages. The Court sustained Plaintiff's objection, and explained to the jury that the question was not appropriate at that time.

Plaintiff contends that this inquiry was harmful because Plaintiff was asking for damages for medical bills, and this question could have left the jury with the impression that Mr. Powell would not be responsible for such expenses. According to Plaintiff, the question left the jury with the impression that Jeffrey Powell was a person who tried to avoid responsibility for his outstanding debts. Plaintiff maintains that ninety-three percent of the claims in the bankruptcy estate related to Powell's medical expenses arising from the underlying accident, and that the balance had been incurred by Powell's ex-wife.[4] This argument goes to the extent of damages, and Plaintiff lost on liability.

Plaintiff complains that the Court did not allow her to correct the inflammatory reference to bankruptcy by defense

---

[4] Defendants assert that their lawyer was referring to a bankruptcy petition that Powell had filed before the accident, not the bankruptcy petition that he filed after the collision because of the cost of his medical care.

AO 72A
(Rev. 8/82)

counsel, but also asserts that it is unlikely that the damage could have been remedied by Plaintiff's lawyers or by a further curative instruction. As Plaintiff notes, such efforts may have called more attention to this irrelevant issue.

The Court concludes that its instruction ameliorated any harm engendered by this inappropriate question. The Court instructed the jury to ignore the question, and the topic was not raised again. Lacaze v. Olendorff, 526 F.2d 1213, 1222 (5th Cir. 1976)(finding that a prompt instruction to disregard obviated the violation of an order on a motion in limine).[5] Plaintiff's ability to get a fair trial was not compromised by defense counsel's single question about bankruptcy. Pullman, 262 F.3d at 762-63 (if error did not in all probability affect the jury's verdict, it is not prejudicial); McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990)(deliberate and repeated references to excluded matters were grounds for a new trial).

---

[5]

In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev. 8/82)

## B. Defense Counsel's Inquiry Regarding Restraining Order

After inquiring about Jeffrey Powell's bankruptcy, Defendants' lawyer asked Ms. Powell if she knew that her ex-daughter-in-law had procured a restraining order against Jeffrey Powell to keep him away from his ex-wife and their children. Although the Court sustained Plaintiff's objection to this question, Plaintiff contends that Defendants' decision to interject allegations of domestic violence involving Mr. Powell prevented Plaintiff from receiving a fair trial.

Powell asserts that the Court should have given the jury an instruction to disregard this question and should have advised the jury that such matters should not be considered in their deliberations. Plaintiff contends that this character attack, either alone or along with the improper question about bankruptcy, so prejudiced the jury against Plaintiff that a new trial is mandated.

Defendants contend that, because Plaintiff's lawyer's direct examination of Barbara Powell had attempted to leave the jury with the impression that Jeffrey Powell had lived a "perfect life" prior to the accident, it was appropriate for Defendants' lawyer to inquire into some of the problems that her son had been having before the collision. According to

AO 72A
(Rev. 8/82)

Defendants, because the central issue in this case regarded fault in causing a motor vehicle accident, whether Mr. Powell had abused his wife physically was unlikely to affect the jury's decision in the case.

While the Court does not believe that Defendants' lawyer's question should be condoned, it does not find that the question, in all probability, affected the jury's verdict. A new trial is not required under these facts. A curative instruction was not requested by Plaintiff during the trial, and it was sufficient to sustain Plaintiff's objection to the question.

### C.  Closing Argument

During closing argument, defense counsel stated:  "I'm thinking that everything [Plaintiff's counsel] said about Jeffrey Powell, other than this accident, is probably correct. He was a good citizen.  He had some problems.  But  who doesn't."  Dkt. No. 279, Ex. D at 3.  According to Powell, this statement flaunted the Court's evidentiary ruling, and ignored her previously sustained objections, by drawing attention to the earlier character attacks Defendants' lawyer had made

AO 72A
(Rev. 8/82)

against Mr. Powell. As a result, Plaintiff asserts that she is entitled to a new trial.

Defendants contend that because Plaintiff's attorney did not object to this statement during the trial, she has waived any argument that the statement was improper. <u>Lakeman v. Otis Elevator Co.</u>, 930 F.2d 1547, 1552-53 n.1 (11th Cir. 1991)("In this circuit the law is clear that a party must make a timely objection at trial to preserve an allegation of improper argument for appeal."). Even if the Court agreed that defense counsel's comment was objectionable (which is a dubious proposition), it concurs that Plaintiff waived her right to object to the statement by not challenging it at trial.

III.    <u>**The Trial Did Not Otherwise Violate Powell's Substantial Rights**</u>

A.    **Burke's Testimony**

To determine whether a party's substantial rights are violated by the admission of improper evidence, so as to warrant a new trial, the court looks

> to a number of factors, including the number of errors, the closeness of the factual disputes (i.e., the strength of the evidence on the issues affected by the error), and the prejudicial effect of the evidence at issue. We also consider whether counsel intentionally elicited the evidence, whether counsel

focused on the evidence during the trial, and whether any cautionary or limiting instructions were given.

Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004).

Plaintiff asserts that the Court erred in allowing Defendants to present inadmissible testimony through their expert, James Burke. At trial, Burke opined that Powell may have fallen asleep at the wheel, causing the accident. Defendants' lawyer asked Burke to state his basis for this opinion. In response, Burke explained: "the lack of any evasive action. We've got — it was late at night. We're talking about after 11:00 o'clock. We have an alcohol-impaired, intoxicated driver." Dkt. No. 279, Ex. E at 7. Plaintiff's lawyer objected, stating that Burke was not qualified to testify as a toxicology expert. In response, the Court explained that Burke could testify that he was making that assumption.

Plaintiff contends that the testimony was prejudicial because the jury was presented with disputed evidence regarding Powell's intoxication, and the effect of his inebriation on the accident. According to Powell, the jury had to weigh the evidence and make these determinations, and the jury heard Burke testify that Powell's intoxication led to the accident.

AO 72A
(Rev. 8/82)

Plaintiff states that the admission of this testimony was prejudicial error, requiring a new trial.

Yet, Burke was not testifying that it was his opinion that Powell was intoxicated. Rather, Burke was basing his opinion that Powell had fallen asleep, in part, on the evidence that had been admitted in the case. Two blood alcohol test results showed that Powell was operating his car while legally intoxicated when the collision occurred. It was permissible for Burke to consider this evidence in forming his opinion. See Fed. R. Evid. 705 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."). Thus, the Court rejects Plaintiff's objection to Burke's testimony on this basis.

### B.    Proposed Voir Dire Questions

The extent and manner of voir dire questioning is a matter within the discretion of the trial court. United States v. Brooks, 670 F.2d 148, 152 (11th Cir. 1982).

Plaintiff posits that she should be granted a new trial because the Magistrate Judge failed to ask certain voir dire questions requested by Plaintiff regarding the panel's feelings

AO 72A
(Rev. 8/82)

about personal injury cases. Prior to trial, Plaintiff asserts that she proposed the following questions to the Court to be asked during voir dire:

> Let's talk a little bit about your feelings concerning lawsuits. Do all of you agree it's the most civilized way to resolve disputes if the parties cannot resolve them themselves?

> Let's cover jury awards that you read about in the paper — do you think there are too many lawsuits, do you think damages awarded are too high, too low, about right, etc.?

> We are going to be asking for millions of dollars in this case because this case has left Mr. Jeffrey Powell with catastrophic injuries requiring virtually full time attendant care, his past medical bills are over $550,000, his past lost wages are over $83,000, his future life care plan and his future wage loss (reduced to present money value) is approximately $3.5 million. The point of this is if the evidence indicates that our client is entitled to a verdict and those damages are substantial, would any of you have any hesitation in returning a verdict for the greater weight of the damages in this case or do you feel there is a certain amount beyond which you could not go.

> In addition to that, Mr. Powell is also entitled to recover for what is called intangible damages. That is there is no bill submitted for the past three years of his physical pain and suffering, his metal anguish in knowing that he is nowhere near the person he was before, realizing he is now brain damaged, any disfigurement he has had, any loss of ability to lead a normal life (which as you will hear has been dramatically affected), and then all of those things for the next 35 years of his life that he is expected to live (pain and suffering, mental anguish, loss of ability to lead a normal life, etc.). Those are also in the category of compensatory damages and does

anyone have any problem evaluating the entire evidence in the case and assessing those damages with an open mind and assessing whatever damages your evaluation leads you to believe they are worth.

Dkt. No. 279 at 16-17.

After Judge Graham concluded voir dire, he gave both parties permission to ask any non-repetitive general questions. Dkt. No. 279, Ex. A at 56. Plaintiff did not choose to ask these questions at that time, and has waived any objection that she might have to the failure to propound these questions to the members of the venire. In addition, Plaintiff has not explained how she was prejudiced by the Magistrate Judge's failure to ask these questions. Brooks, 670 F.2d at 152.


**CONCLUSION**

For the reasons explained above, Plaintiff's motion for a new trial is **DENIED**. Dkt. No. 279. Plaintiff's motion for a hearing on the motion for a new trial is **DISMISSED** as moot, and Plaintiff's motion to strike Defendants' surreply is **DENIED**. Dkt. Nos. 280 & 288.

**SO ORDERED**, this _____29th_____ day of March, 2006.


_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)